CHARLES W. SHORTER, Respondent, v. COUNTY OF CHENANGO, Respondent, and FANNY SQUIRES, Appellant.

Third Department, September 12, 1945.

*H. C. & V. D. Stratton*, attorneys (*C. Vernon Stratton* of counsel), for appellant.

*Frank W. Barnes*, attorney for plaintiff-respondent.

*Janet W. Hill*, attorney for defendant-respondent.

LAWRENCE, J. This action is to determine the ownership of a house and a quarter acre of land located in the town of Norwich, N. Y. The property in question was originally owned by and assessed against Lynn and Elizabeth Barnhart.

The controversy was presented to the court by agreement, pursuant to stipulation, reciting the facts proven. From such stipulation it appears:

1. That the taxes against the property in the years 1931, 1934 and 1935, were not paid and that the County Treasurer of Chenango County sold the property for such unpaid taxes in the years 1932, 1935 and 1936. In each of these last-mentioned years the County of Chenango bid in the property at a tax sale and received a tax certificate and after a year from the date of each such sale, received the County Treasurer's tax deed. These three deeds were immediately recorded in the Chenango County Clerk's office.

2. That all proceedings as to the sale of the property, the execution and delivery of the tax deeds to the county, and the recording of them, were regularly and properly conducted pursuant to the provisions of the Tax Law pertaining to tax sales of real property.

3. That no proof was submitted that the Board of Supervisors of Chenango County at any time passed any resolution exempting the property from further assessment. The property continued to be assessed against some individual party. (Lynn and Elizabeth Barnhart.)

4. That the taxes for the years 1936, 1937, 1938 and 1939 were not paid and the property was advertised for tax sale in each year following. At such sales the property was bid in by Shauder Harmon and certificates were issued and tax deeds given by the County Treasurer to Shauder Harmon for the unpaid taxes for the years 1936, 1937 and 1938. The property was redeemed from the unpaid taxes for 1939. The County Treasurer's deed to Harmon for the unpaid taxes for the year 1936 was recorded in the office of the County Clerk of Chenango County on April 3, 1941. The other tax deeds to Harmon have not been recorded.

5. That on June 16, 1941, Harmon conveyed the premises to Fanny Taylor Squires Guile, formerly Fanny Squires, by quitclaim deed for the sum of $175, that such deed has not been recorded but that the defendant Squires took possession and remained in possession of the premises, and that the premises have been assessed against her since her deed.

6. That on July 14, 1944, the Board of Supervisors passed a resolution directing the chairman and clerk of the board, in consideration of the payment of $190.44, to execute and deliver to the plaintiff a quitclaim deed of the premises, which was done, and said deed was recorded in the office of the County

Clerk of Chenango County on July 18, 1944. Said deed and said certificate recited that all indebtedness against the property, as found on record in the office of the County Treasurer during the period said premises were assessed to Lynn and Elizabeth Barnhart and Fanny Squires, had been paid in full to July 10, 1944.

7. That evidence was introduced by the defendant Squires to the effect that she had expended considerable sums of money on repairs to the premises during the period she had possession. The plaintiff and defendant-respondent objected to the admissibility of this evidence and the Trial Justice reserved decision on its admissibility.

8. That the plaintiff, after receiving his deed, demanded possession of the property and that the defendant Squires refused possession, relying upon the title received by her from Shauder Harmon. The plaintiff sought relief, declaring that the County Treasurer's deeds to Harmon were void.

The opinion in the court below states that the taxes for 1942 were not paid and the county bid in the property at a tax sale held in 1943, and received a certificate of sale therefor. The opinion further states that the tax for 1943, plus the school tax, was returned as unpaid to the County Treasurer by the collector in the sum of $28.50. In 1944, the plaintiff paid to the County Treasurer the sum of $190.44, being the total amount of taxes for the years 1931, 1934 and 1935, together with the interest and expenses of sale in 1933, 1936 and 1938, and the amount of town and school taxes returned to the County Treasurer by the collector in 1943.

The Trial Justice made findings, at the request of the plaintiff, to the effect that the plaintiff was the owner and entitled to possession of the real property involved; that the deeds to Harmon were void and that the defendant Squires had no title to the premises.

The question for determination is the ownership of the premises, which counsel concede is a question of law under the stipulated facts. To put it in other words, the question is which deed is superior. The lower court has held that the title of the plaintiff-respondent is the valid title.

It is contended by the plaintiff that, after the deeds resulting from the tax sales for taxes of 1931, 1934 and 1935, were given to the county, and particularly after the sale in 1932 for the 1931 taxes, any later assessments were illegal and void, at least after the tax sale of 1932.

Under sections 127, 137 and 158 of the Tax Law, the title of the county became absolute at least three years after the sale in 1932, and could not thereafter be redeemed.

Subdivision 2 of section 50 of the Tax Law provides that real property which has been struck down to the county and not redeemed, may be continued upon the tax rolls unless the Board of Supervisors adopts a resolution to exclude them. No resolution of exclusion was adopted by the Board of Supervisors.

Section 153 of the Tax Law provides, in effect, that even though real property bid in by the county is omitted from the tax roll, it may be redeemed, provided the county has not acquired a title in fee. At least by 1935 absolute title in the county was perfected and the period for redemption had passed. Taxes against the Barnharts were assessed in 1934 and 1935, and were unpaid. Sales for such unpaid taxes were held and the property was struck down to the county and deeds given to the county. This would not seem to affect the absolute title of the county in 1935, after the termination of the right of the owner to redeem from the 1932 sale. (*Mabie* v. *Fuller*, 255 N. Y. 194; *Callahan* v. *Underwood*, 260 App. Div. 352, affd. 285 N. Y. 620; *Kostanowski* v. *Donchig*, 269 App. Div. 194.)

When the assessments were made on the property in 1936, 1937 and 1938, against the Barnharts, they had no interest in the property and no right to redeem. There was no justification for such assessments. After 1935 the county could only assess the property against itself. (*Armstrong* v. *County of Nassau*, 101 App. Div. 116.) Such procedure would not justify its sale by the county for taxes which were allowed to remain unpaid by it.

The deed by the county to the plaintiff, dated July 10, 1944, certified that all indebtedness against the property, as found on record in the treasurer's office during the period the property was assessed against Lynn and Elizabeth Barnhart and Fanny Squires, had been paid in full to the date of the deed. If any lien then existed in favor of the county, such lien passed to the plaintiff under the deed. (*Robbins* v. *Abrew*, 275 N. Y. 233.)

The defendant-appellant contends that the county recognized the title of Harmon by virtue of sales based upon assessments in 1936, 1937 and 1938, against persons who had no interest in the property and no right to redeem for unpaid taxes, and that, in pursuance of such assessments and sales, title was acquired by Harmon which could be transferred to the defendant Squires.

The county should not be allowed to assess against another property which belonged to it absolutely or convey any interest in it by sales for such taxes which it allowed to remain unpaid.

The premises should have been withdrawn from the sale in 1938 and subsequent years as the assessments which formed the basis for such sales were improperly made.

The county has filed a brief but has not appealed from the judgment of the trial court.

The judgment should be affirmed, with costs against the defendant-appellant in favor of the plaintiff-respondent.

BREWSTER, J. (concurring). I concur for the affirmance of the judgment appealed from.

The record poses this question: May a county's title to real property not held for public use but which was directly acquired and perfected by its having been duly sold by the county treasurer of the county for unpaid taxes, and not redeemed, there-after be alienated by being sold at another tax sale for unpaid taxes laid upon its assessment to other parties after the county's title became absolute?

When, in October, 1935, the defendant county's first tax deed ripened into a title absolute, the land to which it tokened ownership was not then made exempt from taxation. Land so owned only received a partial exemption for a limited time by an amendment to the Tax Law in 1939. (L. 1939, ch. 853, eff. June 13, 1939.) Until the effective date of such amendment naught appears to have interdicted its continuance upon the tax rolls, and, under the circumstances, the misstatement of the name of the owner to whom it was subsequently assessed was not fatal. It must, I think, upon the record before us, be assumed that upon such assessments all the current taxes were laid. Thus taxes were levied upon non-tax-exempt county-owned property which were in due course returned by the collector to and accepted by the county treasurer as unpaid. They must have been accepted as returned taxes because it was for such taxes that the county treasurer sold the property at ensuing tax sales. When said taxes were so returned and accepted the county was liable for the payment of any unpaid school taxes thereon if duly assessed. (*Union Free School Dist., Urbana, v. County of Steuben,* 178 Misc. 415, affd. 264 App. Div. 945.) It was liable also to the town or any other district for their shares of the taxes duly assessed and so returned and, of course, the county was under the inevitable necessity of making good the deficiency thus caused in the revenues it had anticipated in its

budget, and occasioned by the taxes so returned and as unpaid. In a sense the county then owed to itself certain moneys consisting of its own arrears of taxes. It must, I think, be presumed that by borrowing or in some manner the county supplied the void, and when it did so it must be considered that the taxes were paid. The county could not sell its own property at a tax sale for nonpayment of taxes owing by itself to itself. No one else was then liable for their payment. Thus the tax having been paid the jurisdiction for the subsequent tax sales from which the title of the defendant Squires derives was lacking.

HILL, P. J., HEFFERNAN and FOSTER, JJ., concur with LAWRENCE, J.; BREWSTER, J., concurs in a separate memorandum.

Judgment affirmed, with costs against the defendant-appellant in favor of the plaintiff.